UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GARY D HOWARD #372087 | CIVIL ACTION NO. 17-cv-1128 LEAD |
| VERSUS | CHIEF JUDGE HICKS |
| KEITH DEVILLE ET AL | MAGISTRATE JUDGE HORNSBY |

**Consolidated with**

| | |
|---|---|
| GARY D HOWARD #372087 | CIVIL ACTION NO. 19-cv-1672 |
| VERSUS | CHIEF JUDGE HICKS |
| JOHNNY SUMLIN | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Gary D. Howard ("Petitioner") was charged with (1) possession of marijuana with intent to distribute and (2) illegal possession of a weapon while in possession of a controlled dangerous substance. He had a significant criminal history that exposed him to multiple offender enhancement of any sentence if he were convicted. The State offered a plea bargain with an eight year sentence, but Petitioner rejected it at least eight times and went to trial. Tr. 312.

A Caddo Parish jury convicted Petitioner of the marijuana charge, but it acquitted him of the weapon charge. The prosecutor sought to enhance his penalty as a fourth felony offender. Petitioner entered a plea agreement and admitted he was a second felony habitual

offender, and he was sentenced to an agreed 18 years. Tr. 314-20. His conviction and sentence were affirmed on appeal. State v. Howard, 226 So.3d 419 (La. 2017). Petitioner also litigated a post-conviction application in state court.

Petitioner's first federal habeas petition in 17 CV 1128 presented the following issues: (1) the evidence was insufficient and (2) the prosecutor wrongfully shifted the burden of proof. Petitioner later exhausted more claims and filed a second petition in 19 CV 1672, which is now consolidated with the original proceeding. It added claims of (3) ineffective assistance of counsel and (4) knowing use of false testimony by a police officer. The State and Petitioner filed supplemental record materials (Docs. 18-21) relevant to those claims. For the reasons that follow, it is recommended that the claims presented in both petitions be denied.

**Sufficiency of the Evidence**

    **A. Introduction**

Petitioner argues that the Supreme Court of Louisiana erred when it found that the evidence was sufficient to support his conviction for possession of marijuana *with intent to distribute*. The elements of the offense are that it is unlawful for any person to knowingly or intentionally possess with intent to distribute marijuana. La. R.S. 40:966(A)(1). The court will summarize the trial evidence, discuss the state court decision, and apply the federal habeas standard.

    **B. The Evidence**

Corporal Susan Anderson of the Shreveport Police Department testified that she and two other officers went to an address on Fairfax in Shreveport to serve an outstanding arrest

warrant for Petitioner. The officers knocked on the door, and the homeowner, Ms. Stewart, answered. They asked if Petitioner was present, and she said that he was in the bedroom. Ms. Stewart gave the officers permission to enter the home and look for Petitioner, and they found him naked in bed.

Corporal Anderson asked Petitioner if he had some clothing, and he pointed to some on the floor. She tossed a pair of boxers on the bed and saw that attached to them was a clear baggie that contained four other baggies of marijuana that totaled 11 grams. The officers found a box of identical baggies on top of a TV stand in the same bedroom. They also recovered a medicine bottle that contained a plastic bag with marijuana residue inside, plus small 1" x 1" jewelry bags.

Corporal Anderson testified that Officer Medlin searched a closet in the bedroom and found another seven grams of marijuana. Anderson herself found a black purse in the closet, which she noted was rather heavy. Officer Medlin searched it and found a revolver inside. Petitioner claimed that all of the marijuana belonged to him. As for the gun, he said that he knew Ms. Stewart owned a handgun, but he did not know that it was in the closet. The officers did not find any cash or digital scales.

Officer Rodney Medlin largely corroborated Corporal Anderson's testimony about the arrest and search. He said the bedroom and closet were quite small. The only things in the purse were a Rossi .38 Special, loaded with five or six rounds, and a box of ammunition. The purse was located next to the shoebox of marijuana on a shelf in the closet, which was just two or three feet from Petitioner's bed. The jewelry bags were found

near the shoebox. He said Petitioner told him, when they were in the patrol car, that he knew the gun was in the residence but it did not belong to him.

Medlin said that he did not search inside the dresser drawers, and the officers did not search any part of the house except the room that Petitioner occupied. Defense counsel asked questions aimed at suggesting that Petitioner may have separated the marijuana in his boxer shorts into smaller bags to make the material less likely to be found in the event of a pat-down search. Medlin would not give a straight answer as to whether such dividing would make it more or less difficult to find the marijuana during the pat down.

Lt. Carl Townley of the Caddo Parish Sheriff's Office testified as an expert witness for the prosecution. He has over 25 years of experience as a narcotics investigator, an extensive history as a drug unit commander and undercover agent, and he has attended dozens of training courses and seminars. Townley said that he had testified as an expert hundreds of times in state and federal courts.

Lt. Townley said there were several factors he looked to when determining whether drugs were possessed for use or for distribution. The factors include packaging, statements made, and the presence or absence of certain equipment or paraphernalia that is associated with either use or sales. He found the presence of more than 250 sandwich bags, plus several smaller jewelry bags, to be indicative of distribution. No scales were found, but he said that would not always be expected for distribution of such small amounts of marijuana. No money was found, but he said that dealers are often smart enough to keep their money in a separate place to avoid it being seized or robbed. With respect to the revolver, he said

that police often find weapons in the possession of dealers, who have them primarily to protect themselves from other dealers or people who want to rob them.

Townley estimated that the price of low-grade marijuana was about $5 per gram, with the price increasing with better quality. He had not inspected the marijuana seized in this case to estimate its quality. He testified that a typical joint will be made with .5 to 1 gram, meaning Petitioner was in possession of enough marijuana to make 18-36 joints. Townley said that a typical user would smoke about 3 grams a day, which would mean Petitioner possessed a 6-day supply. He noted that the officers did not recover rolling papers, a pipe, a bong, or any other kind of smoking devices. Lt. Townley testified that, considering the totality of the evidence he was presented, Petitioner possessed with intent to sell as a dealer and was not possessing merely for personal use.

Melissa Stewart testified for the defense. She said that she and her son lived at the home where the arrest was made. She and Petitioner were friends, but he did not live in her home. She said that he would visit once every two weeks or so and stay from a couple of hours to all night. Ms. Stewart said that her son purchased the seized revolver, and she generally kept it in her purse in the top of the closet. She denied that she ever mentioned the gun to Petitioner and, as far as she knew, he was not aware of it. Ms. Stewart said that she knew of Petitioner to use marijuana, on average every other day. Ms. Stewart also said that her home had three bedrooms.

Bobbi Howard, Petitioner's mother, testified that Petitioner lived in her house and had his own bedroom. She allowed that he did go to see his girlfriend pretty regularly, and he sometimes spent a week or two with her before coming home. The girlfriend she

referred to, however, was a woman other than Ms. Stewart, who had described herself as Petitioner's girlfriend. Petitioner elected not to take the stand. The jury returned a unanimous verdict of guilty to possession of marijuana with intent to distribute.

### C. The State Court Decision

Petitioner challenged the sufficiency of the evidence on direct appeal. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).

The state appellate court reviewed the record and applied the Jackson standard to assess the verdict. It noted that the amount of marijuana found was not large enough to create an inference of intent to distribute, and there was no evidence that Petitioner attempted or completed a sale. But there was evidence of paraphernalia consistent with intent to distribute, being the extra box of baggies on the television stand, the baggies in the closet, and the small 1"x1" bags, even though no scales or cash were found. The court noted the absence of a pipe, rolling papers, or other device consistent with personal use of the marijuana. The appellate court determined that this evidence, taken in the light most favorable to the prosecution, was sufficient for a rational trier of fact to have found the required elements proven beyond a reasonable doubt. State v. Howard, 169 So.3d 777 (La. App. 2d Cir. 2015).

The Supreme Court of Louisiana granted a writ and reviewed issues that included the sufficiency of the evidence claim. The court reviewed relevant factors and noted that

while the quantity of marijuana may be relevant in evaluating intent to distribute, it is not the determinative statutory factor. "Ultimately, it is the intent to distribute that must be proved regardless of the amount of drugs possessed." State v. Howard, 226 So.3d 419, 422 (La. 2017). The supreme court agreed with the appellate court that, when all of the evidence was viewed in the light most favorable to the prosecution, a rational juror could have found proof of guilt beyond a reasonable doubt. Chief Justice Johnson was the lone dissenter. She focused on the small quantity, consistent with personal use, and believed that it was speculation to find intent to distribute.

### D. Habeas Analysis

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner makes the same arguments on habeas that he raised in state court. His first obstacle is the deferential Jackson standard, which "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993). And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

This was a close case in the trial court, and defense counsel established some weaknesses in the State's case with regard to the intent to distribute element. The jury was apparently not persuaded. Counsel continued his reasonable arguments on appeal. The state courts fully considered the relevant facts, dutifully applied the Jackson standard, and determined that the verdict should be upheld.

As discussed above, this court's role is much more limited than that of the state courts that decided the Jackson claim in the first instance. "[O]n habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Coleman v. Johnson, 132 S. Ct. 2060 (2012). "The federal court instead may do so only if the state court decision was objectively unreasonable." Id. (cleaned up). Reasonable minds could and have differed as to whether the jury's decision was correct or whether there is sufficient evidence under Jackson to uphold the verdict. But it cannot be said that the state court's decision was not only wrong but was an objectively unreasonable application of the Jackson standard to the facts presented. Considering the doubly deferential standard of review, the state court's decision must withstand habeas challenge.

Petitioner's habeas memorandum also invokes Thompson v. City of Louisville, 80 S.Ct. 624 (1960), which held that a conviction was unconstitutional if the charges were totally devoid of evidentiary support. The State argues that, to the extent this is asserted

as a claim separate from <u>Jackson</u>, it has not been properly exhausted. The court need not address the exhaustion defense and may deny the claim on the merits. 28 U.S.C. § 2254(b)(2). The "no evidence" standard of <u>Thompson</u>, which was even more favorable to the prosecution, was expressly abandoned in <u>Jackson v. Virginia</u>, in favor of the standard applied above, for habeas challenges to state criminal convictions. Petitioner's arguments do not warrant habeas relief under the more forgiving <u>Jackson</u> standard, so the <u>Thompson</u> standard is easily satisfied.

**Shifting of the Burden of Proof**

Petitioner pursued his direct appeal to the Supreme Court of Louisiana. After that court affirmed his conviction, Petitioner filed an application for rehearing that asserted for the first time that some of the prosecutor's questions and arguments unconstitutionally shifted the burden of proof to the defense. Petitioner raised that same claim in his federal petition.

The State responded that Petitioner did not exhaust his state court remedies with respect to this claim because he did not properly present it to the state courts in accordance with applicable procedures that gave them a fair opportunity to address the issue. Petitioner filed a Motion to Dismiss Claim Without Prejudice (Doc. 11), in which he stated that he "agrees with the State's contention that he did not properly submit his second claim … to the State courts and this claim is therefore unexhausted." He asked the court to dismiss the claim without prejudice, and that request was granted. Doc. 12. Accordingly, the court need not address the merits of this dismissed claim.

**Knowing Use of Perjury**

Petitioner argued in his second petition that the State knowingly allowed Detective Medlin to give false testimony at trial about the firearm. Medlin said at the suppression hearing that Petitioner told him the marijuana was his and that "he had knowledge that the gun was in there (the house); he just didn't realize that it was in the closet." Tr. 151, 155. Medlin later testified at a "free and voluntary" hearing that Petitioner said that "he was aware of the handgun in the room, but it was not his." Tr. 185. In response to defense counsel's questions, Medlin said the statements should have been recorded by his patrol car's MVS system. Tr. 186. After the court ruled that Petitioner's statements were admissible, Petitioner said, "Your Honor, this is not going to be on that tape. … I know that's not on that tape." Petitioner said that he did not remember the police asking him about the gun, and he "never admitted to knowledge of knowing that the gun was in the house." Tr. 188.

Medlin testified at trial that Petitioner made a post-<u>Miranda</u> statement inside the patrol unit "that he actually knew the gun was in the residence but it did not belong to him." Tr. 233. He said Ms. Stewart originally said that the gun belonged to someone else, then said that it belonged to her son. Officer Medlin said that a request for information on the gun was sent to the ATF, but he did not know at the time of trial who might be associated with the weapon through paperwork.

Medlin repeated on cross-examination that Petitioner admitted that he knew the gun was in the residence. When defense counsel asked him if Petitioner admitted that he knew the gun was in the closet, Medlin answered, "His words were he knew it was in the house;

he just didn't know whose it was." Medlin said that this statement was made in his patrol unit and that the recording system was always running in the car. He was not sure whether Petitioner was ever placed in any other patrol units that day. Tr. 248-49.

The prosecutor had warned at the beginning of the trial that the defense planned to use a video, but there could be problems getting it admitted through the witnesses who were present. She said that the one (unnamed) officer who heard the conversation recorded in that car had not been subpoenaed for trial so could not authenticate the recording. The two officers who were at trial (Medlin and Anderson) did not hear the recorded conversation. The judge advised defense counsel that a proper foundation would be required to admit the recording. Tr. 196.

After Officer Medlin testified, defense counsel asked, "May I use this video for just a minute?" An unrecorded bench conference was then held, after which the trial moved on without the video being played or the participants giving any explanation. Defense counsel completed his cross-examination of Medlin by asking if he was aware if Petitioner made any statements to an Officer Schultz, and Medlin said he was not. Tr. 250. This suggests that the recording at issue was made in Schultz's unit, but the record is not clear.

Petitioner argued in his post-conviction application that the State violated due process when it allowed Medlin to commit perjury. "The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." Kinsel v. Cain, 647 F.3d 265, 271 (5th Cir. 2011) (citing Napue v. Illinois, 79 S.Ct. 1173 (1959). To establish a denial of due process through the use of perjured testimony, a petitioner must show "that (1) the witness gave false testimony; (2)

the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." Reed v. Quarterman, 504 F.3d 465, 473 (5th Cir. 2007).

The state trial court applied the Napue standard and found that Petitioner had not met it because he did not demonstrate that Medlin's statements were actually false and that the State knew that the statements were false. The court reasoned that the only support that Petitioner offered was that Officer Medlin knew that Petitioner claimed that the gun was not his, but the defendant's statements alone are not enough to prove that the officer testified falsely about the gun, let alone that the prosecution knew that Medlin was testifying falsely. Absent "stronger evidence," the claim lacked merit. The state appellate court summarily denied a writ application "on the showing made." The Supreme Court of Louisiana denied a writ application that summarily found that Petitioner "fails to satisfy his post-conviction burden of proof." State v. Howard, 281 So.3d 662 (La. 2019).

The state court denied this claim on the merits, and "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011), quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).

Petitioner has not demonstrated that the state court's denial of post-conviction relief on this claim was an objectively unreasonable application of Napue. His argument relies on nothing more than his personal assertion that Medlin testified falsely about the gun.

Petitioner suggests that recordings from a patrol car could have been used to impeach Medlin, and he says that the prosecutor and the court intentionally kept the defense from introducing the video. Petitioner has not presented a transcript or other evidence of the content of the recording, and the record suggests it was excluded based on valid evidentiary rules. Petitioner's arguments on this claim often vary from an allegation of false testimony to an argument that the testimony about the firearm should somehow be disregarded or eliminated because he was acquitted of the firearms charge. But evidence about the presence of the firearm was relevant to both counts that were on trial, and the acquittal did not retroactively change that. The state court's denial of this claim was not an objectively unreasonable application of Napue or other clearly established federal law, so habeas relief is not permitted.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner argues that his attorney rendered ineffective assistance of counsel ("IAC") in three ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The state court denied the Strickland claims on the merits.

    **B. Habeas Burden**

Petitioner's IAC claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the

state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### C. No Objection to Townley's Opinion Testimony

Lt. Townley testified as an expert witness. He was asked what conclusions he reached, and he answered, "That the suspect in this case, Mr. Howard, was not possessing for personal use; he was possessing with intent to distribute marijuana." Petitioner argues that counsel was ineffective because he did not object to this testimony on the grounds that it expressed an opinion as to Petitioner's guilt.

The state trial court denied this post-conviction IAC claim, citing Louisiana Code of Evidence Article 704, which provides that opinion testimony "is not to be excluded

solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused." The court found that there was no basis for counsel to object because the expert's opinion on intent to distribute was admissible under this article. The appellate court and supreme court summarily denied writ applications, with the supreme court writing that Petitioner "fails to show that he received ineffective assistance of counsel under the standards of Strickland[.]"

Townley offered an opinion on an issue to be decided by the jury, intent to distribute, but he did not testify as the guilt or innocence of Petitioner. The Louisiana Second Circuit addressed a case where Townley gave similar testimony a few years before Petitioner's trial. It stated: "The state may ask the expert witness whether it is his or her opinion, from the evidence, that the person in possession of the drugs had the intent to distribute. Where the witness never explicitly says that the defendant is guilty of possession with intent to distribute, the testimony does not violate La. C.E. art. 704." State v. Cummings, 57 So.3d 499, 508 (La. App. 2d Cir. 2011).

The Cummings decision was on the books when Petitioner went to trial in 2014, so there was not a valid basis for counsel to object to Townley's opinion testimony. "[C]ounsel is not required to make futile motions or objections." Garcia v. Stephens, 793 F.3d 513, 525 (5th Cir. 2015), quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990). Given the applicable rule of evidence, the state court's denial of this IAC claim was not an objectively unreasonable application of Strickland.

### D. Failure to Call Witness

Petitioner argues that counsel was ineffective because he did not call Gabrielle Moody as a witness. Petitioner argues that Ms. Moody would have testified that she saw Petitioner purchase the marijuana already individually packaged the way it was found by the police. Petitioner does not offer much information about Ms. Moody, but Officer Medlin said at a pretrial hearing that she was one of Petitioner's girlfriends, and she had lodged a battery complaint against him for putting "a big knot on her forehead from where he kicked her to the ground." Medlin said Ms. Moody also told him that Petitioner was "in the business of selling pharmaceuticals" and known to carry a gun. Tr. 150.

The state trial court, when deciding this post-conviction IAC claim, noted that the decision to call a witness is a matter of trial strategy. The court reasoned that counsel may have chosen not to call Moody because he was concerned that her testimony would allow the prosecution to introduce evidence of Petitioner's parole or probation status. (This suggests that Moody's battery complaint perhaps led to the parole revocation arrest warrant.) The court added that defense counsel did call Ms. Stewart, who testified that Petitioner regularly consumed marijuana, thus making Moody's testimony redundant. Petitioner argues that the state courts were wrong because there is no evidence of counsel's reason for not calling Moody, and her testimony would not be redundant because Stewart did not testify that she witnessed Petitioner's actual purchase of the already bagged marijuana.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."

Page 16 of 20

Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). A petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3rd 527, 538 (5th Cir. 2009).

Petitioner did not make this showing to the state court by affidavit or other evidence, and Officer Medlin's testimony indicates that Petitioner was likely better off without putting Ms. Moody on the stand. His claim lacks habeas merit under the requirements of Section 2254(d). Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ..."); Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect); and Evans, 285 F.3d at 377 (reversing habeas relief when no affidavits were presented from the alleged witnesses). The state court's denial of this IAC claim was not an objectively unreasonable application of Strickland.

**E. Failure to Challenge Arrest Warrant**

Petitioner argues that counsel was ineffective for not raising challenges to his arrest and the related search on the grounds that the arrest warrant used to justify entrance of Ms. Stewart's home was not signed or supported by a sworn affidavit. (Copies of the warrant in the record are not signed.) Defense counsel did file a motion to suppress and argued that "the police did not have a warrant either for the arrest of Mr. Howard or for the entry in Miss Stewart's home." Tr. 46. He also argued that Ms. Stewart's alleged consent was not

valid. An evidentiary hearing was held, and the trial court denied the motion to suppress. Tr. 123-64.

Appellate counsel challenged the denial of the motion to suppress, arguing that the police needed a search warrant to enter the home. The Second Circuit stated that, under Louisiana law, an arrest warrant gives officers the limited authority to enter a home in which the suspect lives when there is reason to believe he is inside, but a search warrant is generally required to go inside the home of a third party to make an arrest. The need for a search warrant is, however, satisfied when the homeowner grants consent to entry. The court held that Ms. Stewart gave valid consent to the entry of her home and, later, the search of her bedroom. State v. Howard, 169 So.3rd at 788-89. The Supreme Court of Louisiana found no error in the determination that Ms. Stewart gave valid consent, so a warrant was not required. State v. Howard, 226 So.3rd at 425-26.

Petitioner asserted this IAC claim in a post-conviction application. The trial court denied the application on the grounds that the court found in the earlier proceedings that the warrant was valid. See Tr. 140 & 195-96. In the alternative, Petitioner was "still validly arrested," even if the arrest warrant was not signed or properly supported, because Ms. Stewart voluntarily consented to the search. That consent was upheld on direct appeal. As noted above, the appellate court and supreme court summarily denied writ applications on the post-conviction application, with the supreme court writing that Petitioner "fails to show that he received ineffective assistance of counsel under the standards of Strickland[.]"

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth

Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007). This is a habeas challenge under Section 2254(d)(1), so the Petitioner must establish not only that suppression of the evidence would be the correct result, but also that it would be contrary to or an unreasonable application of clearly established federal law for the state habeas court to rule otherwise. Evans v. Davis, 875 F.3d 210, 219 (5th Cir. 2017).

The state court's adjudication of this claim was not an objectively unreasonable application of Strickland, Kimmelman, or other clearly established federal law decided by the Supreme Court. Counsel filed a motion to suppress that challenged the police's entry into the home and search of the bedroom. The state courts held that the entry was legal and that the evidence was admissible even if the police did not have a warrant that authorized entry of the home. Under these circumstances, counsel cannot be found to have rendered IAC that resulted in prejudice. The result would have been the same even if counsel had raised the specific attacks on the arrest warrant that Petitioner now urges.

Accordingly,

It is recommended that Petitioner's petitions for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of August, 2020.

Mark L. Hornsby
U.S. Magistrate Judge