

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   SHREVEPORT

AUG 3 1 2020

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GARY D HOWARD #372087 | CIVIL ACTION NO. 17-cv-1128<br>LEAD |
| VERSUS | CHIEF JUDGE HICKS |
| KEITH DEVILLE ET AL | MAGISTRATE JUDGE HORNSBY |

**Consolidated with**

| | |
|---|---|
| GARY D HOWARD #372087 | CIVIL ACTION NO. 19-CV-1672 |
| VERSUS | CHIEF JUDGE HICKS |
| JOHNNY SUMLIN | MAGISTRATE JUDGE HORNSBY |

## OBJECTION TO REPORT AND RECOMMENDATION

**Insufficiency of the Evidence -Due Process**

The Jackson standard requires an Appellate Court to determine wither viewing the evidence in light most favorable to the prosecution was sufficient to convince a rational trier of fact that all of the element of the crime had been proven beyond a reasonable doubt.

Petitioner urges that the courts adjudication of his case resulted in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in sight of the evidence presented in the state court proceedings; 28 U.S.C.§ 2254(d).

Lt. Townly, of the Caddo Parish Sheriff's Office testified as an expert witness for the prosecution. He has over "25 years of experience" as a narcotics investigator, an extensive history as a drug unit commander and undercover agent, and he has attended dozens of courses and seminars.

1

Lt. Townly said there were several factors he looked to when determining whether drugs were possessed for use or for distribution. The courts held that the evidence was sufficient where Townly testified that the way the marijuana was packaged was in the form associated with distribution, the quantity of similar empty bags and the absence of any smoking paraphernalia sufficed to support defendant's conviction. p.12, 169 So. 3d at 786.

(1)     Lt. Townly testified that the marijuana was packaged in the form associated with distribution. However, Townly could not give specifics as to the street value in reference to the individually packaged bags (e.g., whether as to $5,$10 etc.). He attempted by estimating the price of low-grade marijuana, "insinuating" it was about $5.00 per gram. (Vol.II p.261), with the price increasing with better quality. Moreover, he had not inspected the marijuana seized in this case to ply an incisive estimation as to its quality. Further, the four individual bags of marijuana that was tied to the boxers weighed a total of 11 grams. Townly estimated that it was worth $55.00 by saying that would mean Petitioner would have to take each individual bag, open it up, break it down into portions and then sell it for $5.00 a gram. This testimony clearly rejects the testimony that the marijuana was packaged for distribution. Of which brings to question, how could a rational jury have reasonably concluded from these  important facts that Petitioner packaged the marijuana with the intent to distribute it without having to speculate? Lt. Townly who has over 25 years of experience in this field, should have been more than capable upon the inspecting of this evidence, when it was given to him, to inspect during his testimony (Vol. II p.257-258) in order to determine the value of the individual bag, Lt. Townly also testified that the Petitioner could have purchased the marijuana in the same way it was found. (Vol.II p.263-264)

(2)     As for the empty sandwich bag that was found in the room of Ms. Stewart, Lt. Townly said that a person using wouldn't have all those bags. (Vol. II p.257). However, the record clearly reflects that it was determined that Petitioner did not live with Ms. Stewart. Even the court acknowledges that the

Petitioner was merely a guest and did not have any expectations to privacy in the home or bedroom. (Vol. III p.18). Further, there was no evidence presented to determine if in-fact those bags belonged to the Petitioner or that he actually used those bags again. The jury would be subjected to opinion, because it was only said those bags were similar rather than saying the exact same bags. Additionally, Ms. Stewart testified Petitioner uses marijuana. Even the courts recognized this fact as Lt. Townly testified that it was possible that the Petitioner could have possessed the marijuana for personal use (Vol.II p.257-265). Again, how could a rational juror reasonably have rejected this hypothesis without speculating.

(3)    The absence of smoking paraphernalia is not even one of the determining factors that the Louisiana Supreme Court set forth when proving intent. Therefore, it should not hold any evidential value. The five factor(s) which give rise to a reasonable inference of an intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to other's; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute." State v. Gilbert, 839 So. 2d 222 (1975). 250 (La. 2003)

The state's evidence does not have to remove all doubt, but merely those doubts that are reasonable. Thornburg v. Mullin, 422 F.3d 1113 (10th Cir. 2005).

A jury may draw an inference only where that inference can be made beyond a reasonable doubt. This is certainly true where the inference goes to an ultimate conclusion underpinning criminal liability e.g., satisfying an element of a crime necessary f or conviction. United States v. Summers, 414 F.3d 1287, 1302-03 (10th Cir.2005).

The standard of review for sufficiency of the evidence is set forth in Jackson v. Virginia, 443,

3

U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Although, the Jackson standard does not permit a reviewing court to substitute its judgment of what the evidence proved at trial for that of the jury... Nevertheless, "the jury cannot be permitted to speculate if the evidence is such that  reasonable jurors must have reasonable doubt." [quoting 2c Wright Federal Practice and Procedure, Criminal 2d 4671 2d ed. 1982]

Considering the foregoing facts, the Report and Recommendation erroneously denied Petition. Whereas, the State Courts adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C.§ 2254(d). Where Lt. Townly's testimony as to the marijuana being packaged for distribution, his further testimony gives reason to believe that Petitioner would still have to break the already packaged marijuana down into portions in order to distribute it. So how could this marijuana have been packaged by this Petitioner with the intent to distribute it? The empty bags were never actually proven to belong to him, nor that he actually ever possessed those bags. They were found in Ms. Stewart's home where the "courts" considered Petitioner to be merely a guest visiting. Absent smoking paraphernalia not found in the home where Petitioner does not live does not suggest intent to distribute. Therefore, the evidence is unconstitutionally insufficient even in the light most favorable to the prosecution to prove guilt beyond a reasonable doubt.

Wherefore, Petitioner's insufficient evidence claim is meritorious and should be granted requested relief of conviction reversed.

**Ineffective Assistance of Counsel -Sixth Amendment**

Petitioner argues that counsel rendered ineffective assistance of counsel in three ways. To prevail on such claim, Petitioner must establish both that counsel's performance fell below objective standard of reasonableness and that had counsel performed reasonably, there is a reasonable probability

that the result in his case would have been different. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).

**Failure to Object to Townly's Prejudice Testimony**

Lt. Townly testified as an expert witness. He was asked what conclusions he reached, and he answered, "that the suspect in this case, Mr. Howard, was not possessing for personal use; he was possessing with intent to distribute marijuana." This testimony is clearly an indirect expression as to an opinion that Petitioner is guilty of possessing with the intent to distribute marijuana. Whereas, the testimony was tantamount to an opinion that Petitioner was guilty of the crime charged, an indirect, abstract inference as to the ultimate issue in the case.

The jury may couple the knowledge gained from the experience of the officer with the characteristics exhibited by the defendant as established by the state at trial and make an inference as to the ultimate issue of the defendant's guilt. On the other hand, that inference as to the ultimate {421 So.2d 900} issue of defendant's guilt is for the jury and the jury alone. When an expert ventures his opinion on that issue he improperly usurps the function of the jury. State v. Montana, 421 So. 2d 895 (1982).

As stated above, this, Lt. Townly did when he gave his opinion essentially concerning the guilt of Petitioner. Whereas, the state's case to the jury is that the Petitioner possessed marijuana with intent to distribute it. Whether or not Petitioner was possessing with intent to distribute marijuana based on the evidence was for the jury to decide not Lt. Townly.

However, rejecting this claim the state and the court points to **State v. Cummings**, 57 So. 3d 499, 508 (La. App. 2d Cir. 2011). The court in Cummings states: " The state may ask the expert witness whether it is his or her opinion, from the evidence, that the person in possession with intent to distribute, the testimony does not violate La. C. E. art. 704." According to the court in Cummings an expert witness may indirectly testify as to the guilt or innocence of accused as long as the witness does

not say the actual word guilty or innocent.

On the contrary the Louisiana Supreme Court in **State v. Montana,** 421 So. 2d. 895 (1982), stated in effect, Taplin specifically gave his opinion upon the basic issue in the case – whether the narcotics in Filmore's pocket were in the constructive possession of the defendant and whether there was an intent to distribute them. As the subject matter of the opinion approaches the hub of the issue, the risk of prejudice and hence of reversible error consequently increases. This is particularly so when the witness expressing the opinion is one, such as a police officer, in whom jurors and the public repose great confidence and trust. **State v. Wheeler,** 416 So. 2d at 82. The Louisiana Supreme Court reversed both Montana and Wheeler, for the same exact testimony presented in Petitioner's case.

**La.C.E. Art 704** state's: opinion testimony is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

It seems that the court has either misinterpreted the legislative intent or decided to give their own interpretation to the meaning of **La. C.E. 704**. Where,there is nowhere in the article that it says as long as the witness shall not "explicitly" say the word guilty. The article, however, specifically states: "shall not express an opinion as to the guilt". Clearly, after closely considering **La.C.E.art. 704** as a whole. It is obvious whats their intent. The first and the second sentence or basically saying the same exact thing. The only distinction between the two, is that one is admissible in a non-criminal case but inadmissible in a criminal case.

Consequently, if a witness is to be allowed to express an opinion by say "the defendant was possessing a drug with intent to distribute it" which is the exact issue of the state's case to the jury. Then there would be no use for a jury. It is the jurors specific duty to determine from the evidence, if the accused is guilty of the crime charges, ~~without saying the actual word guilty~~.

Clearly, counsel should have objected to this kind of testimony where it is reasonable that it

effected the outcome how the jurors interpreted this Petitioner's position.

**Failure to Challenge Validity of Arrest Warrant**

This Honorable Court in its Report and Recommendation and the State both erroneously interpreted that counsel filed a motion to suppress on the grounds that there was no warrant either for Petitioner's arrest or for the entry in Ms. Stewart's home. Likewise, the state courts held that the arrest was legal and that the evidence was admissible even if the police did not have a valid warrant that authorized the arrest.

Clearly, this is a miscarriage of justice and an unreasonable application of clearly established Federal law. Whereas, the motion to suppress evidence hearing was based strictly on the grounds that officers needed a search warrant to enter the home of Ms. Stewart to arrest Petitioner with a valid arrest warrant. (Vol. I p143-44) Also, the validity of the warrant was never legally challenged although the trial court stated the warrant was valid. However, there is nothing in the record that could confirm the warrant was valid. This Honorable Court even acknowledges that, (copies of the warrant in the record are not signed).

Furthermore, the courts ruled that even if the arrest warrant was not signed, Petitioner was still validly arrested because Ms. Stewart gave consent to enter and search her home. The courts erroneously ruled that consent was given free and voluntarily. With regards as to consent to enter the home Ms. Stewart testified as followed:

### On direct -Counsel-Ms. Stewart

(Q)  Did they ever ask, "would it be okay if we come into your home" or anything to this effect?

(A)  No. It—no, not to that effect. Not then. When I said that he was there, "they came in".

(Q)  So you answered that he's there and that he's in the bedroom; is that right?

(A)  Yes. Uh-huh.

(Q)  You told them that? In telling them that, did you intend to be giving them a green light to come into your home?

(A)  It was out of my control,I felt, after that point. (Vol. I p160). No consent was given from Ms. Stewart's testimony.

7

## Cross-Prosecutor-Ms. Stewart

These questions were unclear because Ms. Stewart is never actually asked did she give the officers consent to enter her home. Asked and answered as followed:

**(Q)**    Did you allow them to come in and look for Gary?

**(A)**    Yeah. I told them he was in the bedroom. (Vol.I p 162)

The record reflects that Ms. Stewart was confronted by three or four officer's who said they had an arrest warrant for petition. They asked was he there, she says yes, they come in. Never asked consent, just came in. This is corroborated by Anderson's testimony.

**(Q)**    Did you have the occasion to execute an arrest warrant for Gary Howard?

**(A)**    Yes, ma'am.

**(Q)**    Could you tell us about the execution of that warrant?

**(A)**    Yes, ma'am. I was contacted by Officer Medlin. He advised he had a warrant for an individual at the address on Fairfax 5218. We went to that location; knock on the door; made contact with the homeowner, Ms. Stewart; explained why we were there. She advised that Mr. Howard was in the bedroom; didn't tell which bedroom. "the officers went ahead and went in," cleared the residence; located Mr. Howard in the southeast bedroom and "took him into custody". (Vol. I p 128-29)

This is what Officer Anderson first testified to, of which concurs with the testimony of Ms. Stewart, in that, consent was never asked. Once she said I was there they came in. Prosecutor asked both officer's specifically did homeowner give consent. Never was it asked or answered at Motion to Suppress hearing how Ms. Stewart gave consent or did officers ask her for consent. Whereas, counsel specifically asked Ms. Stewart several times did she give officers consent and did they ever at any time ask for consent to enter her home. (Vol. I p. 159, 160, 162).

8

Ms. Stewart, never specifically says that she gave officers consent to enter her home. What she said was that she ~~neither~~ allowed them, nor did she try to stop them from entering to look for Petitioner. Of which at the time of occurrence, considering the situation and Ms. Stewart's limited knowledge of law, is only reasonable since she was bamboozled into believing that these officers possessed a warrant for the Petitioner's arrest. On the other hand, she feared that if she would have tried to stop or not allow them to come in, she could have faced criminal charges. (Harboring a Fugitive).

As for the ~~first~~ arrest warrant, this Honorable Court has acknowledged that the arrest warrant in the record is not signed. Which makes this warrant invalid. By the officer's usage of this invalid warrant it initiated a chain of events. Therefore, even if the court does not want to acknowledge that Ms. Stewart did not give officers consent to come into her home. That still does not justify the unlawful arrest of Petitioner. These officers had no legal authority to detain this Petitioner by placing him in hand cuffs. The record clearly reflect that the Petitioner was under arrest before any contraband was found. So now the question that remains is, "How was this Petitioner legally arrested as the courts stated just because Ms. Stewart supposedly had given her consent to enter" -she could not give officers the consent to arrest Petitioner when the petitioner had not committed any crime.

The fourth Amendment limits police officer's authority to detain individuals. U.S. Const. Amend. IV ("The right of the people to be secure in their person... against unreasonable... seizures... shall not be violated.") Specifically, an officer cannot arrest an individual absent probable cause, i.e., a "fair probability" that the individual has either committed or intends to commit a crime. United States v. Sallow, 490 U.S. 1,7,109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Further, cannot briefly detain an individual unless the officer reasonably suspects the individual has been involved in criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed 2d 889 (1968).

Where a person is detained with the purpose of taking into custody, an arrest occurs, even if the police officer does not so inform the arrestee. The courts refuse to acknowledge the ultimate fact that

9

Petitioner's Fourth Amendment rights against unreasonable seizures that is protected and guaranteed by the United state Constitution.

The effect of the 4th Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons,... and effects, against all unreasonable... seizures and guise of law. This protection reaches all alike, whether accused of a crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of obtained after subjecting accused person to unwarranted practices destructive of rights secured by the federal Constitution should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

What, then, is the present case? Here, the officers entered the home with supposed consent of Ms. Stewart under the false pretense they possessed a valid arrest of Petitioner. Petitioner was then unlawfully arrested by means of said warrant. After, the unlawful arrest Officer Anderson went around to the side of the bed where this Petitioner was lying. In the process of, she observed a pair of boxers on the floor, picked them up, then tossed them to the other officer for the Petitioner to put them on. As the boxers landed on the bed, she noticed there was a clear plastic bag with green leafy substance tied to them. (Vol. I, p 129)

Under the true facts in the record, it is clearly apparent that the Petitioner's Fourth Amendment right against unreasonable seizures has been violated and the evidence used at Petitioner's trial should have been suppressed due to it was tainted by the unlawful arrest of Petitioner.

Therefore, as a result of trial counsel's deficient performance in failing to challenge the validity of the arrest warrant, Petitioner was prejudiced and there is a reasonable probability the outcome would have been different. Clearly when properly applying the Strickland standards for IAC has been

10

satisfied.

Additionally, in the interest of justice, this Petitioner should be granted the requested relief for his conviction to be reversed and remanded for a new trial.

**Production of Perjury -Due Process**

The Courts and the State both argue that Petitioner's claim relies on nothing more than his personal assertion that Officer Medlin testified false and that prosecutor knowingly allowed the false testimony. However, Petitioner included enough evidence in support of his claim to at the least warrant an evidentiary hearing to prove his allegations. Included with filed memorandum marked as Exhibit "C" is a copy of a "Case Chain of Custody Report" from the Shreveport Police Department with reference to three videos that's on a CD from Officer Medlin, Anderson and Schultz, patrol car's, M.V.S. Also marked as Exhibit "C" is copies of transcript from proceedings, one is Officer Medlin's falsified testimony during free and voluntary hearing as well as Petitioner bringing to the attention of the court said false testimony. The other one is from the proceeding right before trial commenced where the state and the court reviewed the video with defense counsel in order to determine it's admissibility.

Why would the court rule evidence that was clearly relevant to the defense case inadmissible only on the grounds that the prosecutor claimed that because the conversation was held in Officer Schultz patrol car so it could not be authenticated. Whereas, he was not subpoenaed to testify at trial? However, Officer Medlin testified that said conversation was made to him in the back of his patrol car and that it was recorded. It seems that ruling the video inadmissible was nothing more than a play in-between the state and the court in-order to prevent the defense from presenting damaging evidence against the state's case.

Further, it also seems that the courts are abusing its authority by turning a blind eye to the injustice that is clearly noticeable in the record in which took place throughout the entire proceedings

11

of Petitioner's case (including appellate review). As much, the courts refuses to grant an evidentiary hearing so that Petitioner could efficiently prove that his claim is meritorious. Nevertheless, the courts expects Petitioner to produce transcripts, along with abstractions from the video in which is impossible due to Petitioner's incarceration where there is no access to the required equipment.

Petitioner's claim is that the prosecution knowingly allowed it's witness to give prejudiced testimony which not only violated Petitioner's Fourteenth Amendment right to Due process. It is also a violation of professional code of ethics which is a serious matter which would explain why the courts and the state or intentionally trying to keep the video out of the record by not allowing Petitioner an evidentiary hearing. This is a serious allegation. One that could be proven to be true or false by the said video. So that brings to question, if the Petitioner is making such serious false accusation under the penalties of perjury. The state has a copy of this video that would prove the accusations are false.

Petitioner's right to due process was violated under the rules of Napue. Therefore, Petitioner prays this Honorable Court grant the requested relief and remand for an evidentiary hearing.


## CONCLUSION

It is clearly apparent that the Court has erroneously made an unreasonable application when applying clearly established Federal law and Constitution in denying Petition, (1) Evidence was insufficient to prove possession with intent to distribute. (2) Counsel was ineffective for objecting to prejudice testimony (3) Counsel was ineffective for failing to challenge the validity of arrest warrant. (4) Prosecutor knowingly used false testimony.

Further, the Court failed to produce correct facts of law as a basis to justify its determination. Whereas, Petitioner provided factual evidence from the record, law and from the constitution of this land as provided to all citizens.

Therefore, the court's determination renders a conflicting decision and erroneously application

of clearly established Federal Laws and constitutions. It is clearly apparent that this case is a product of racial injustice something that the State of Louisiana is highly known for. Petitioner argues that evidence does not support his conviction to prove he is guilty of the crime charged beyond a reasonable doubt. Where state experts witness testified that it's possible Petitioner possessed marijuana for personal use. He also testified that Petitioner could have purchased marijuana already packaged the way it was found. This is clearly reasonable doubt when the only evidence to support this conviction is Townly saying the marijuana was packaged in the form that it distributed but when asked the street value his testimony suggested Petitioner would have to break the marijuana down to smaller portions in order to distribute it. So how was it already packaged for distribution?

## PRAYER

Wherefore, Petitioner prays this Honorable Court apply the legal law tot his case by granting relief and ordering Petitioner's immediate release from custody.

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF CLAIBORNE**

I, **GARY HOWARD,** do hereby verify under penalties of perjury that I am the petitioner in the foregoing Objection to the State's report and Recommendation, that I have read and/or prepared all the matters contained therein, and that all matters contained therein, are true and/or correct to the best of my knowledge and/or belief.

_____   Aug. 26, 2020
Signature of Petitioner
Gary Howard DOC# 372087
pro-se

13